346 So.2d 1290 (1977)
Edward M. GREER, Plaintiff-Appellant,
v.
Joe C. ROHRER, Defendant-Appellee.
No. 5982.
Court of Appeal of Louisiana, Third Circuit.
May 13, 1977.
Rehearing Denied June 24, 1977.
*1291 Sydney I. Horn, Lake Charles, for plaintiff-appellant.
Planchard, Thompson & James by A. J. Planchard, Sulphur, for defendant-appellee.
Before DOMENGEAUX, GUIDRY and ROGERS, JJ.
ROGERS, Judge.
Plaintiff-appellant, Edward M. Greer, filed this suit in quanti minoris[1] against Joe C. Rohrer, defendant-appellee, who constructed a septic system for plaintiff's $130,000.00 home.
The system consisted of a 900 gallon septic tank and a total of 400 feet of field line. Plaintiff-appellant seeks a reduction in price in the amount of $788.00, as he alleges that only the 900 gallon septic tank was not defective.
Two months following the installation of the septic tank system and upon completion of the residence plaintiff moved into his new home. Immediately plaintiff began experiencing problems with his indoor plumbing facilities, i. e., the commodes and bathtubs would not drain and the sewerage would back up into plaintiff's home. There is no question but that these problems occurred as a direct result of the malfunctioning of the septic tank system. Plaintiff contacted defendant in regard to this problem, whereupon defendant informed him that the trouble was due to the heavy rains and the problem would correct itself when the rains stopped. Plaintiff waited several weeks and during dry weather again contacted defendant, insisting that he was still experiencing the same problems with the system. Defendant at this time indicated that the problem could be alleviated by installing a second 100 foot field line that ran to the front of the house. The purpose of this second line would be to drain off the overflow of rain water thereby allowing the first field line to drain the sewerage. Defendant indicated that the second field line would only drain the excess rain water. Plaintiff agreed to the installation of the second line which ran to a ditch in the front of his home. The cost of this installation was $225.00. Plaintiff stated that this second line did solve the problem of the sewerage backing up but that after several weeks he noticed a pungent odor coming from the ditch in the front of his home. Plaintiff testified that this second field line, which drained into an open ditch contrary to State and Local regulations, was discharging *1292 raw sewerage rather than clear water. Plaintiff testified that this second field line continued to drain even though the initial 400 feet of field line was dry. Plaintiff again called defendant who offered no solution to plaintiff's problem, other than to fill in the low spots in his yard with dirt. Further complaints to defendant about the odor from the second field line proved to be of no avail, defendant's response simply being that there was nothing further he could do to alleviate the problem. Thereafter, plaintiff had a new sewerage system installed, using the 900 gallon septic tank originally installed by defendant.
The trial court, although recognizing that the plaintiff's septic tank system was inoperative and defective, rejected plaintiff's demand finding: (1) Plaintiff failed to prove the cause of the functioning difficulty in the system; (2) defendant was ready, willing and able to correct any problem in the system; (3) plaintiff in changing sewerage systems after only five (5) weeks, left the defendant in a totally defenseless position; and, (4) defendant should have been given the opportunity to repair the septic tank system.
In considering the first holding of the trial court, it is rather obvious that the plaintiff who proved the functioning difficulty in the septic tank system does not have to further establish the exact cause of the malfunction. Regarding the second and fourth holding of the trial court, the evidence is clear defendant was given ample opportunity to correct the system but was unable to do so. In response to questioning by the court the defendant stated at Transcript page 128:
"THE COURT: Do you think you could have done anything else to have made the system work better?"
"THE WITNESS: No, sir. That line we put in was my last alternative, without changing to another type system, which would have been expensive, very expensive."
Defendant also testified that he told plaintiff that he had done everything that he knew of to fix the system. Again, on page 144 of the Transcript, the defendant responded to the court questions:
"THE COURT: Do I understandLet me interrupt you here, please.
After you put the extra line on, as I understand your testimony, as far as you're concerned, he had a good system?
THE WITNESS: Yes, sir.
THE COURT: Except for the odor.
THE WITNESS: It was a workable system. It could have worked, if he had left that on.
THE COURT: Except for the odor.
THE WITNESS: Right . . . ."
Although the State Department of Health had initially inspected the installation of the plaintiff's septic tank and issued a permit, the Department would not have given a permit for the second field line. The second field line would have had to have been removed from the public drainage. We conclude that the defendant was given ample opportunity to correct the problems in the septic tank system and by his own admission, was unable to do so.
In considering the trial court's third holding, it is clear that the defendant was not left in a totally defenseless position. The trial court in so finding relies on the fact that after only five weeks, plaintiff had his septic system changed. As hereinabove stated, the evidence shows that defendant, who was called upon on numerous occasions to correct the system, was unable to do so. We think the plaintiff had no alternative but to have a new system installed. Further, the evidence shows that the defendant did not honestly believe the problem had been corrected by the additional 100 foot line, but to the contrary, knew that this 100 foot line had created a new and equally offensive problem. Finally, we note that the evidence reveals that the field lines and septic tank installed by defendant remained on plaintiff's property although disconnected from the new septic system.
A review of the plaintiff's petition indicates that its allegations lack the essential elements necessary for a cause of action *1293 in quanti minoris, in particular there was no sale and delivery as contemplated in LSA-R.C.C. Articles 2534, 2544 and 2546. [See Kegler's, Inc. v. Levy, 239 So.2d 450 (La. App. 4th Cir. 1970), writs refused, 256 La. 1150, 241 So.2d 253; and, Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (La. 1961)]. Rather, clearly the situation is that of a contract to furnish and install a septic tank disposal system, i. e., a building contract under R.C.C. Article 2756.
We are no longer hamstrung by the old "theory of the case" doctrine (LSA-C.C.P. Articles 854-862 and 2164), and since the petition alleges facts sufficient to state a cause of action for breach of contract under R.C.C. Article 2769, we may consider it as such.
Based upon the evidence in the record, it is clear that the septic tank system installed by defendant was defective and totally useless as a result of improper installation. We therefore conclude that the defendant failed to execute the contract in a workman like manner and as agreed to, and he should accordingly respond in damages to the plaintiff, R.C.C. Article 2769. We calculate the damages as the amount plaintiff paid to defendant ($1,038.00) less the value of the septic tank which plaintiff retained ($250.00), or the net sum of $788.00.
For the above and foregoing reasons the judgment of the trial court is reversed and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Edward M. Greer, and against the defendant, Joe C. Rohrer, for the sum of $788.00 together with legal interests on such sum from date of judicial demand until paid. It is further ordered that defendant be cast for all costs on the trial level and appeal.
REVERSED AND RENDERED.
NOTES
[1] C. C. Article 2541. Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price.