352 So.2d 714 (1977)
Harold H. STREAM, III, et al., Plaintiffs-Appellants,
v.
P. L. LeJEUNE, d/b/a LeJeune Roofing, Defendants-Appellees.
No. 6153.
Court of Appeal of Louisiana, Third Circuit.
October 17, 1977.
Rehearings Denied December 14, 1977.
*715 Camp, Carmouche, Palmer, Carwile & Barsh by Joseph A. Delafield, Lake Charles, for plaintiffs-appellants.
Planchard, Thompson & James by A. J. Planchard, Sulphur, for defendants-appellees.
Before DOMENGEAUX, WATSON and FORET, JJ.
WATSON, Judge.
Plaintiffs, Harold H. Stream, III and Vinton Community Hospital Foundation, have appealed from a trial court judgment dismissing their suit against Phillip Lee LeJeune, d/b/a LeJeune Roofing. Stream is the owner of the Vinton Hospital building and leases it to the plaintiff foundation. LeJeune agreed to re-roof the building for $6,000. Stream brought this suit when the replacement roof leaked and LeJeune refused further repairs. The Hospital joined Stream in the suit and both claim various items of damages. An exception of no cause of action was filed to the Hospital's claim and referred to the merits.
The damages claimed by plaintiffs include: repair costs; inconvenience; return of the contract price; cost of replacement in excess of the contract price; repair of damage to the interior; attorney's fees; and loss of use of certain rooms in the hospital.
It is undisputed that the roof commenced leaking shortly less than a year after its installation. Voluminous testimony was presented as to the cause of the problem. The trial court concluded that LeJeune had carried the burden of proving that the roof was not defective.
FACTS
Stream purchased the hospital building and decided to have the roof replaced because of some minor leaks. Virgil Junk, land manager for Stream's family holdings, met with LeJeune and Carl B. Blake of Blake Building Materials at the hospital about October 5, 1974. There is a dispute about the dialogue at this meeting. LeJeune and Blake testified LeJeune told Junk the roof could not be guaranteed because of the building's structural weakness. Junk said LeJeune did not say this until his roof failed.[1] All agree that Junk engaged *716 LeJeune to put a new roof on the hospital with Bird roofing material specified. Junk testified he contracted for a 20 year bonded roof. Blake supplied the Bird roofing used by LeJeune on the job.
After the job was completed, LeJeune presented Junk an invoice which stated:

"Tear off old roof. Clean yard, haul off
all trash. Replace with 15 yr. bonded
roof. Bird Roofing Material Hospital
building & office
Labor & Materials
Total $6,000." (TR. 55)

When this was brought to Junk's office by LeJeune, Junk noted on the invoice "This is a 20 year roof." The notation was signed by LeJeune. LeJeune testified he did not tell Junk it was a 20 year roof but that he used 20 year material. A $6,000 check was issued by Stream to LeJeune dated November 5, 1974.
In October, 1975, less than a year after completion of the roofing, Ms. Theriot, former administrator of the hospital, called Junk to tell him the roof was leaking. Junk inspected the building and found water damage which recurred after every hard rain. LeJeune made one effort at repair but then declined further efforts unless Stream would pay the cost of materials. LeJeune testified that additional repairs could not be guaranteed, because the building needed structural work.
Other roofers did partial repairs, but the roof still leaked at the time of trial. Morgan Roofing Company submitted a bid to replace the roof for $7,012.00.
The most impressive evidence in the record as to the cause of the leaking roof is the testimony of Taylor Kaough, an architect. He testified that he found no structural defects in the building, bar joists or roof deck. He found the foundation and walls of the building to be in sound condition. He explained that the roof deck is a lightweight aggregate concrete, poured on a corrugated metal form. The lightweight concrete or zonolite deck has a different expansion and contraction coefficient from that of the roofing material. It is therefore necessary that the roofing material not be bonded solidly to the roof deck, as the two have to separately expand and contract with changes in temperature. Kaough's opinion was that the hospital roofing had been solid mopped with tar and thereby bonded to the underlying deck, which prevented separate expansion and caused splitting and leaking in the roof membrane. According to Kaough, the Hospital roof does not meet 15-year specifications and cannot be satisfactorily repaired.
Expert roofer Ray Morgan observed the leaking problems but found no structural defects that would prevent the application of a 20-year bonded roof on the Hospital. According to this expert, LeJeune's solid mopping was improper and caused the failure of the roof. Morgan also testified that LeJeune's invoice indicated a bond had been furnished on the roof, since, if you follow manufacturer's specifications but are not required to furnish a bond, you refer to the roof as bondable. Morgan said roofing materials used on the hospital did not meet the standards for a 15 or 20 year roof. Morgan testified that the leaks in this roof could not have occurred from anything other than expansion.
There is considerable other testimony in the record concerning the method by which the roof was applied. Some say it was spot mopped, some say it was strip mopped and others say it was solid mopped, but, despite the variance, it is without dispute that the roof split at various points, causing leaking and the only reasonable explanation is that presented by Kaough and Morgan.
The trial judge concluded that the claims of Stream and the Hospital against LeJeune should be dismissed because LeJeune had successfully carried the burden of proving that the roof installed by him was not defective. We do not find a reasonable evidentiary basis for this conclusion, which is manifestly erroneous. A leaking roof is defective. There was an attempt on the part of defendant to show that there was some cause for the leaks other than his work, a weakness in the roof *717 deck or vibration of the air conditioning units. LeJeune even said that he advised Virgil Junk he could not guarantee his work because of structural weakness. This is not only denied by Junk, but is at variance with the written invoice, which states that the roof was a 15 year or 20 year roof. It is inconceivable that Junk would be so careless of the affairs of his employers as to contract the re-roofing of a building for $6,000 when the roofer declared prior to the agreement that he could not put on a roof which he would guarantee.
Plaintiffs have attempted to argue that this is a suit in redhibition, but there is no sale involved. LSA-C.C. art. 2545. The fact that it is not an action in redhibition also disposes of the claim for attorney's fees.
This is a suit for failure by the builder of a roof to perform his work in a good workmanlike manner, free from defects in either materials or workmanship. Nichols Ford Company, Inc. v. Hughes, 292 So.2d 345 (La.App. 2 Cir. 1974); Neel v. O'Quinn, 313 So.2d 286 (La.App. 3 Cir. 1975) writ denied 319 So.2d 440 (La.).
The roof constructed by LeJeune was defective and he must bear the legal consequences.
STREAM'S CLAIM
Stream variously claims the price of a new roof, the return of the contract price for the defective roof, and the cost of temporary repairs. In the usual case involving defective construction, the builder is responsible only for the cost of repairs. See Nichols Ford Company, Inc. v. Hughes, supra. However, the evidence is that the Hospital roof cannot be satisfactorily repaired with anything less than the complete application of a new roof. To do justice between the parties we have concluded that LeJeune must repay to Stream the contract price of the defective roof. This approach was followed in the case of Emdon v. Olympia Roofing Co., 11 La.App. 614, 124 So. 615 (La.App.Orl.1929). We do not find an obligation for LeJeune to pay Stream the cost of a new roof, as estimated by Morgan, because Stream will be returned, following refund of the payment, to the same condition as prior to the contract. He is not entitled to an improved position. As to the temporary repairs, there is no showing that these were greater than Stream would have incurred with his old roof, which was leaking prior to the contract with LeJeune. We do not find that LeJeune is required to pay Stream for the temporary repairs.
HOSPITAL'S CLAIM
The hospital claims various items of damages from LeJeune. The damages asserted are too speculative to be awarded, even if there is a cause of action. The proof is not sufficient to support an award of damages.
Therefore, for the reasons assigned, it is ordered, adjudged and decreed that there be judgment in favor of Harold H. Stream, III, and against P. L. LeJeune, d/b/a LeJeune Roofing, in the amount of $6,000, together with legal interest from date of judicial demand until paid. All other demands of Stream are denied and the demands of the Vinton Community Hospital Foundation are dismissed. All costs, both at trial and on appeal, are taxed against P. L. LeJeune.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[1] The trial court did not make a factual finding on this point and we are not reversing on a credibility issue. Our review of the record finds that the evidence on this point, as discussed infra, preponderates against defendant.