399 So.2d 782 (1981)
Richard Dale TRAHAN, Plaintiff-Appellee,
v.
Harold L. BROUSSARD et al., Defendants-Appellants.
No. 8234.
Court of Appeal of Louisiana, Third Circuit.
May 27, 1981.
*783 Darrell J. Hartman, Kaplan, for defendants-appellants.
Cooper & Sonnier, John Ortego, Abbeville, for plaintiff-appellee.
Before GUIDRY, FORET and CUTRER, JJ.
FORET, Judge.
Richard Dale Trahan (Plaintiff) brought this action for breach of a building contract or, in the alternative, redhibition against Harold L. Broussard d/b/a H. L. Broussard Builders (Defendant), to recover damages for the alleged faulty construction of a pool house and game room.
The trial court rendered judgment in favor of plaintiff and defendant appealed. Defendant presents two issues:
(1) Whether the trial court committed manifest error in finding defendant liable to plaintiff;
(2) Whether the trial court used the proper measure in determining the amount of damages it awarded plaintiff.

FACTS
Plaintiff and defendant entered into an oral contract whereby defendant agreed to construct an addition to plaintiff's home, consisting of a pool room and a game room on a cost-plus basis. The final price for the addition was approximately $18,700.00 and construction was completed around the end of October, 1977.
Plaintiff first began to notice deficiencies in the structure in August, 1978, which grew worse with the passage of time. The building is now in such condition that it is unsafe to use and would probably collapse but for the extraordinary measures taken by plaintiff.
Plaintiff instituted this action on July 27, 1979, alleging that defendant (who was the general contractor for the project) had breached the implied warranty of fitness in the building contract, and his duty to perform in a workmanlike manner. Plaintiff further alleged, in the alternative, that he had purchased the addition or the services provided by defendant in constructing the addition and that certain defects in the building rendered it unfit for the purposes for which it had been constructed (i. e., redhibition).
The trial court rendered judgment against the defendant and awarded plaintiff the sum of $29,385.35 in damages. Defendant was granted a devolutive appeal.

DEFENDANT'S LIABILITY
Plaintiff asserted two causes of action against the defendant in the court below. The first was that there existed a construction contract between the parties which was breached when defendant failed to perform properly under it. Plaintiff's second cause of action, plead in the alternative, was that a contract of sale existed between the parties which was breached when the defendant delivered a construction which was so defective that it was unfit for the purposes it was intended to serve, i. e., redhibition.
We must first determine whether the contract is a construction contract or a contract of sale. In Duhon v. Three Friends Home Builders Corporation, 396 So.2d 559 (La.App. 3 Cir. 1981), we had occasion to resolve an identical issue. Plaintiffs there brought an action in redhibition seeking to recover for an allegedly defective house built for them by defendant. Plaintiffs had negotiated with defendant to build the house and choose the floor plan and color scheme they desired. Defendant then constructed the house and it was moved onto plaintiffs' lot. Thereafter, plaintiffs noticed several major defects in the house. Defendant was unsuccessful in its attempts to repair the house, and plaintiff's brought suit, demanding a rescission of the sale or in the alternative, a reduction in price, plus attorney's fees.
Defendant filed a motion for summary judgment contending that the contract entered into between the parties was a contract to build and, therefore, plaintiffs could not recover in redhibition. Plaintiffs, *784 on the other hand, contended that the contract was a contract to sell a future thing, the sale becoming effective on completion of the house.
Duhon set forth three major factors which distinguish a contract to build from a contract of sale. First, in a contract to build, the "buyer" has some control over the specifications of the object. Second, the negotiations in a contract to build take place before the object is constructed. Third, and perhaps most importantly, a building contract contemplates not only that one party will supply the materials, but also that that party will furnish his skill and labor in order to build the desired object.
We find all three factors to be present in the action before us. Here, the contract contemplated the erection by defendant of an addition to plaintiff's home which would enclose a heated swimming pool and provide a game room. Therefore, we find that the contract in question was a construction contract, and thus plaintiff failed to state a cause of action in redhibition, as no contract of sale existed. See Mangin v. Jorgens, 24 So.2d 384 (La.App. Orl. Cir. 1946); Papa v. Louisiana Metal Awning Company, Inc., 131 So.2d 114 (La.App. 2 Cir. 1961); and Henson v. Gonzalez, 326 So.2d 396 (La.App. 1 Cir. 1976).
It is implicit in every construction contract that the work of the builder be performed in a good, workmanlike manner, free from defects in materials or workmanship. Martin v. AAA Brick Company, Inc., 386 So.2d 987 (La.App. 3 Cir. 1980); Neel v. O'Quinn, 313 So.2d 286 (La.App. 3 Cir. 1975), writ denied, 319 So.2d 440 (La.1975); Nichols Ford Company, Inc. v. Hughes, 292 So.2d 345 (La.App. 2 Cir. 1974); Merrydale Glass Works, Inc. v. Merriam, 349 So.2d 1315 (La.App. 1 Cir. 1977), writ denied, 350 So.2d 1211 (La.1977).
There was little dispute as to the present condition of the structure. The evidence shows that the walls of the structure are sagging or bowed to the outside; the roof ridge beam sags down approximately 8½ inches at one point; the roof leaks; the interior and exterior paneling in the bath area of the pool enclosure is warped; the interior and exterior paneling in the pool enclosure itself is warped; and, there are areas of the slab on which the structure was built that have no proper footing. Plaintiff had to stretch a wire rope from wall to wall and then tighten it with turnbuckles to prevent the structure from collapsing. There is also evidence of damage to plaintiff's home, to which the structure is attached.
Plaintiff argues that defendant failed to complete all of the work contracted for; used defective materials for construction; performed the work in an improper and unworkmanlike manner; and, used defective designs in constructing the building.
Plaintiff testified that defendant told him there would be no need to engage the services of an architect to design the building as defendant could take care of any problems which might arise during construction. Defendant's own testimony was to the effect that plaintiff had asked him if he would need an architect to design the building. Defendant testified that he asked plaintiff what he wanted in the building and plaintiff showed him. Defendant testified that he then replied, "What you need an architect for if you're going to show me what you want in the building?" Defendant is the one who designed the building.
David Burdette was accepted by the court as an expert in the field of civil engineering. It was his opinion that the design selected by defendant was defective and that it was inadequate to support the weight of the roof. Burdette stated he would have used a different design. He also testified that he would have used stronger pieces of lumber and would have placed them closer together had he chosen defendant's design. Burdette was of the opinion that the building started to fail during construction based on certain things he found during an inspection thereof, i. e., pieces of plywood that had been scribed to compensate for the sagging roof.
*785 Joe Willie Garteiser was accepted by the court as an expert in the field of architecture. He was also of the opinion that the design and materials used by defendant were inadequate to support the weight of the roof and that the building had started to fail while it was being constructed.
Defendant argues that the damages sustained by plaintiff were brought about by his own omission and, therefore, the trial court's finding of liability against him is manifestly erroneous. Defendant contends that plaintiff knew there would be a problem with moisture in the structure but failed to properly ventilate it to remedy the problem. It is defendant's position that the design of the roof support system was adequate. He argues that moisture entering the attic (which was absorbed by the lumber) added weight to the roof and that this was an intervening cause of the failure of the roof support system.
Defendant presented the testimony of William Bradshaw, who was recognized by the court as an expert in the field of architecture and argues that Bradshaw found the design to be adequate. However, the record shows that Bradshaw found defendant's design to be adequate in theory only. He also testified that he would have used a different design in constructing the roof support system.
We find that defendant used a defective design in building the roof support system of the addition, and that the consequences of using this defective design became apparent even as the building was being constructed. Therefore, defendant breached his contract with plaintiff by failing to construct a building which was free from defects in materials and workmanship. We also find that the presence of moisture in the structure simply hastened the ultimate failure of the structure which was caused by defendant's defective design.
Our review of the record establishes that the trial court's finding that the law and evidence are in favor of plaintiff on the issue of liability is not clearly wrong. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

TRIAL COURT'S COMPUTATION OF DAMAGES
The trial court accepted Lurcey Landry as an expert in the field of building and residential construction. He estimated that it would cost $34,571.00 to demolish the present structure and to properly construct a new one. He allowed $3,600.00 for demolition and $1,229.00 as the cost of repairing the damage done to plaintiff's home in computing his estimate.
The trial court awarded plaintiff the sum of $29,385.35 in damages. This figure was arrived at by using the sum of $34,571.00, less 15% of that figure as the value of materials that could be salvaged from the existing structure. Essentially, the trial court was attempting to place plaintiff in the position he would have occupied had defendant properly performed under the contract.
Defendant argues that the trial court erred in its computation of damages. Instead, defendant contends that where a construction is so defective, as to be useless, the loss sustained is the price paid for the construction, plus the cost of removal thereof, less the value of the work done which enures to the benefit of the plaintiff. Defendant computes plaintiff's recovery as being $18,707.31 (the price paid for the construction) plus $3,200.00 (cost of demolishing the structure), less $2,700.00 (the value of the concrete slab which would remain around the pool) for a total of $19,207.31.
The basic provision with respect to a contractor's liability for failure to properly perform a building contract is LSA-C.C. Article 2769 which provides:
"Art. 2769. Contractor's liability for non-compliance with contract
Art. 2769. If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."
*786 We have found that defendant failed to execute the work in the manner which is implied in all construction contracts, i. e., in a good, workmanlike manner, free from defects in materials and workmanship. Therefore, under LSA-C.C. Article 2769, defendant is liable in damages for the losses suffered by plaintiff which resulted from defendant's non-compliance with the contract. Further, out of the five experts who testified at trial, four recommended that the existing structure be torn down, as it was so defective that it was beyond repair. It is obvious that the trial court found this to be a fact and we concur in that finding.
This Court, in Neel v. O'Quinn, supra, had occasion to review an action brought by homeowners against a building contractor for the alleged defective construction of the premises. The contractor filed a reconventional demand seeking the balance allegedly due on the contract. We stated in Neel, at page 290, that:
"... [sic] if the defects are such that cannot be corrected except by removing and replacing the construction, under the jurisprudence the owner may require the contractor to remove the object from his land and restore the premises to their prior condition. In addition, the owner is entitled to damages. National Water-Purifying Co. v. New Orleans W. W. Co., 48 La. [Ann.] 773, 19 So. 865 (1896); Toepfer v. Thionville, 229 So.2d 415 (La.App. 4th Cir. 1974); Scott Fence & Insulation Co., Inc. v. Boudro, 252 So.2d 458 (La.App. 4th Cir. 1971); Montague v. Milan, 67 So.2d 351 (La.App. Orl. Cir. 1953); Home Services v. Marvin, 37 So.2d 413 (La.App. Orl. Cir. 1948)."

See also Martin v. AAA Brick Company, Inc., supra.
The Louisiana Supreme Court, in Ilgenfritz v. Radalec, 74 So.2d 903 (La.1954), had before it an action by homeowners for damage incurred because of the installation of a defective heating plant. The court in Ilgenfritz, quoted with approval the following language found in Montague v. Milan, 67 So.2d 351, at 354 (La.App. Orl. Cir. 1953) which reads:
"However, when the contractual work fails to measure up to the specifications of the contract and nothing can effectually remedy the existing condition and the owner is forced thereby to make alterations in his plans in order to acquire a useable structure, he is not obligated to settle with the contractor in conformity with the doctrine of `substantial compliance', unless he desires to use whatever the contractor has created. To elucidate, in such a situation the owner may say to the contractor that nothing that he may do will produce the building which was contemplated in the plans, and that, therefore, the contractor will be required to entirely remove what he has erected. On the other hand, the owner may say (or so act) to the contractor that what he had erected is not the structure which was designed, but that, the owner, nevertheless, by effecting changes in his plans, can use what the builder has constructed. If he decides to follow this alternative, he is liable to the contractor for what has been erected, less the amount it may cost him to secure a useable building, even though the construction is not such as was contemplated by the plans. * * *" (Emphasis ours.)
Ilgenfritz found that the heating system there (like the structure in the action before us) was totally useless, and with respect to the measure of damages which the homeowners could recover, stated, at page 906, that:
"The standard measure of damages is established by the Code as the losses ensuing from non-compliance. It is shown in this case that the losses sustained is the payment for a useless heating system and its installation, the cost of removing that useless heating system, and the cost of restoring plaintiffs' home to its former condition. These are all losses under the contract. Defendant is liable for those losses. In fact, there should be compensation up to and to the extent for the losses actually sustained in this case amounting to restoration of this status quo:"
*787 Ilgenfritz then went on to quote LSA-C.C. Article 1928, which provides:
"Art. 1928. Right to require undoing of acts in violation of contract
Art. 1928. The obligee may require that any thing which has been done in violation of a contract, may be undone, if the nature of the cause will permit, and that things be restored to the situation in which they were before the act complained of was done, and the court may order this to be effected by its officers, or authorize the injured party to do it himself at the expense of the other, and may also add damages, if the justice of the case require it."
See also Sartori v. Hunter, 158 So.2d 457 (La.App. 2 Cir. 1963), writ denied, 159 So.2d 287 (La.1964).
In our opinion, it was error for the trial court to fix plaintiff's damages at what it would cost to replace the existing structure, with a properly constructed new one, as this would place plaintiff in an improved condition to which he is not entitled. Plaintiff is only entitled to be returned to the condition he was in prior to the contract. See Stream v. LeJeune, 352 So.2d 714 (La.App. 3 Cir. 1977); Greer v. Rohrer, 346 So.2d 1290 (La. App. 3 Cir. 1977).
We find that plaintiff suffered the following losses. First, the payment he made to defendant for this useless structure ($18,707.31). Second, the cost of demolishing said structure; removing the defective slab on which it was built, and restoring plaintiff's home to its former condition. Frank Hardee was accepted by the trial court as an expert in the field of building construction. He estimated that it would cost between $7,000.00 and $8,000.00 to do the above. Lurcey Landry (the above mentioned expert who was accepted by the court as such) estimated that it would take $7,500.00.
We award plaintiff $7,500.00 for these losses for a total award of $26,207.31.
For the above and foregoing reasons, the judgment of the trial court is amended so as to award plaintiff the sum of $26,207.31, plus legal interest thereon from date of judicial demand, and as amended, is affirmed in all other respects.
Costs of this appeal are assessed one-half to defendant-appellant, and one-half to plaintiff-appellee.
AFFIRMED AS AMENDED.