KING, Judge.
The issue presented by this appeal is whether or not the trial court was correct in finding a contract between the parties and in awarding damages for breach of that contract.
Leroy and Dorothy Brown, husband and wife (hereinafter plaintiffs), orally contracted with Percy Smith (hereinafter defendant) to build an addition onto their home and to make improvements therein. The majority of the work was to be renovations and addition of a new room to plaintiffs’ existing home with a new roof for the addition. Claiming faulty construction and unsatisfactory performance, the plaintiffs sued defendant for damages for breach of contract. After trial on the merits, judgment was rendered in favor of plaintiffs and against defendant in the amount of $12,000.00 plus legal interest from the date of judicial demand, and all costs of court. Defendant timely appeals urging a lack of contract between the parties. We affirm.
FACTS
In March, 1983, plaintiffs and defendant entered into an oral agreement to make renovations and an addition to plaintiffs’ existing home. Defendant was to build a carport, expand the kitchen some ten feet, and put a roof over the new addition. As Rev. Brown was the pastor of the church that defendant attended, the parties did not enter into a written contract but rather came to an oral agreement for the construction work. In May, 1983, defendant left the job and did not return.
According to plaintiffs, shortly after the defendant had left the job, and after the first seasonal rain, several leaks developed in the roof the defendant had added. After several requests that defendant return and repair the leaks, the plaintiffs filed suit alleging a breach of contract and unwork-manlike performance by the defendant in his renovation work and building of an addition to the plaintiffs’ home.
At trial, defendant testified that there was no specific agreement for a price between the parties and that his estimate for the work originally requested by the plaintiffs was $25,000.00. Defendant stated that after explaining this estimate to the plaintiffs there was an oral agreement for him to begin work and to do as much work as possible for $14,000.00, the amount of a first mortgage loan obtained by the plaintiffs. Defendant further stated he did all the work that he could and spent the $14,-000.00 given to him in the process. He denied receiving any additional money and further denied ever being told of any irregularity with his work until December, 1984, more than eighteen months later.
The plaintiffs’ version of the oral agreement and the price is different. Plaintiffs stated that the original estimate given by defendant was for $25,000.00 but that included the price of addition of a den onto the existing house. After a discussion of the price and work, Rev. Brown testified he was told by defendant that, by excluding the den addition, the remaining work could *608 be completed for $14,000.00. Mrs. Brown substantiated this, testifying that she was told by defendant "... I’ll do it for $14,-000.00.” She further stated that, before the work was actually completed, defendant told plaintiffs he would need an additional $3,000.00 to complete the work. Rev. Brown testified that he gave defendant the additional $3,000.00 in expectation of him completing the work he had begun. Plaintiffs testified they were surprised when defendant took the extra cash, left, and never returned.
Much of the testimony at trial pertained to the allegations of unsatisfactory workmanship of the defendant. Introduced at trial were several photographs of the work performed by defendant. Rev. Brown identified the photographs and pointed out the deficiencies in each photograph representing the defective work performed by the defendant. Mrs. Brown, on direct examination, also identified the photographs and pointed out the irregularities in the defendant’s work.
Much of the work performed by the defendant and the roofing sub-contractor, Jerry Jones, pertained to the addition and roofing on the existing house. There were also certain renovations to be done to the existing portion of the house. The record and photographs before this court show many flagrant and fundamental construction flaws in the defendant’s work. A sink added shows the Formica peeling behind it; part of a roof beam sticks outside of the roof itself, unpainted and exposed to the elements; a set of temporary steps made from scrap lumber; wall siding cut too short; plywood nailed over an absent roof vent; uncompleted arches in the front of the house; and an interior door moved to the exterior of the house, exposed to the elements and rotting and peeling.
Despite these numerous flaws, the primary complaint of the plaintiffs was the downpour of water they received in their house each time it rained. Photographs introduced at trial showed the buckets used to catch the water and the resulting roof stains and rotting carpet.
Jones, the roofing sub-contractor, was called to testify on behalf of the defendant. He stated that he built the roof as instructed by the defendant, and that he “eyeballed” the necessary “drop” needed for proper drainage. Jones further testified that he was concerned that there might be leakage from the valley between the old and new roof surfaces, but that he built to specifications which were given to him by the defendant.
James Chase, a carpenter called to testify on behalf of the plaintiffs, stated that the roof, as constructed, did not have sufficient drop needed to properly drain rainfall. He further testified that because of defendant’s failure to properly build the roof, water would stand in the valley area long after rainfall had ceased. Chase’s estimate of the cost of repairs was $28,000.00.
Charles Warner, another building contractor called by the plaintiffs, verified Chase’s testimony. When asked about the cost of repairs, he estimated it at approximately $12,000.00.
Our review of the record shows that plaintiffs have clearly proved by a preponderance of the evidence that all the defendant’s work was, at best, poorly performed. This is what plaintiffs alleged in their petition, what they proved at trial, and what the trial judge ruled at the conclusion of the trial. Defendant, however, does not appeal from the finding by the trial judge that defendant’s work “caused considerable water damage to the house. I think the plaintiffs adequately proved that ...” Rather, defendant appeals alleging a lack of contract between the plaintiffs and defendant and, thus, no meeting of the minds as to exactly what work was to be performed and for what price.
LAW
At the conclusion of the trial, the trial judge found there was a contract between the parties. Defendant cites the provisions of former Louisiana Civil Code Article 1779 (1983), in effect when this claim arose, setting forth the requirements for a contract which were: (1) parties legally capable of contracting; (2) their consent legally given; *609 (3) a certain object which forms the matter of the agreement; and (4) a lawful purpose. Defendant’s argument before this court is confined to the third element, that being a certain object forming the matter of the agreement; in this case, what was to be built and the price for its construction. Defendant argues that because the oral agreement reached between him and the plaintiffs was not in written form, that any contradictions about the price and the work to be done, which were brought out at trial, substantiates his assertion that there was no meeting of the minds, hence no contract. Defendant fails to recognize that discrepancies in evidence as to the exact price agreed to and the extent of the work to be performed are likely to be present at any trial for breach of an oral contract, and that these discrepancies are to be weighed by the trier of fact and will not be disturbed absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Defendant testified that Mrs. Brown gave him $14,000.00. Mrs. Brown testified she gave defendant $17,000.00, or $3,000.00 more, most of which was for the addition of a garage door on the garage. Both parties stipulated that the $25,000.00 estimate was to include a den which was left out of the plans as being too expensive. Although lack of agreement on an exact price or for the exact work to be done under a contract often defeats a construction contract, there are occasions where its absence does not totally defeat plaintiffs efforts to recover for unworkmanlike performance of a defendant. See, B & B Cut Stone Co., Inc. v. Resneck, 465 So.2d 851 (La.App. 2 Cir.1985); Martin v. AAA Brick Company, Inc., 386 So.2d 987 (La.App. 3 Cir.1980).
Defendant admits to receiving $14,000.00 to begin the work. He further states that he told the plaintiffs he would go as far as the money would allow him to. On the other hand, Mrs. Brown stated that the defendant told her that the work could be completed for $14,000.00. This lack of agreement in testimony as to the exact price and extent of work to be done does not destroy one of the requirements for a contract, rather it presents a factual dispute for the trial court to determine depending upon which evidence the trial judge finds more credible. The trial judge found there was a contract between the parties and this court finds no manifest error in this finding.
This court finds that there was an agreement between the parties on the price and on the renovation and addition to the plaintiffs’ home. The evidence adduced at trial clearly establishes the faulty construction of the roof and the new addition. In Hebert v. McDaniel, 479 So.2d 1029 (La.App. 3 Cir.1985), and also in Stream v. LeJeune, 352 So.2d 714 (La.App. 3 Cir.1977), this court recited the fundamentals of recovery for unworkmanlike performance. In Hebert, supra at page 1033, we stated:
“LSA-C.C. Art. 2769 states:
‘If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.’
This article dictates that every contract for work or services contains an implied obligation of performance in a good workmanlike manner in default of which the contractor must respond in damages for any losses which may ensue. Tiger Well Service, Inc. v. Kimball Production Co., 343 So.2d 1153 (La.App. 3 Cir.1977).
The plaintiffs burden of proof in such a case is to prove that a defect exists and that the defect came about as a result of faulty workmanship or materials. Neel v. O’Quinn, [313 So.2d 286 (La.App. 3 Cir.1975) ], supra; Melder v. Cassiott, [436 So.2d 628 (La.App. 3 Cir.1983) ], supra; Tiger Well Service, Inc. v. Kimball Production Co., supra; Bico Enterprises, Inc. v. Cantrell, 413 So.2d 260 (La.App. 3 Cir.1982). A roof which leaks is a defective roof. Stream v. LeJeune, 352 So.2d 714 (La.App. 3 Cir.1977); Goudeau v. Hill, 410 So.2d 338 (La.App. 4 Cir.1982).”
*610 Plaintiffs met this burden of proving defects and that the work performed by defendant was done in an unworkmanlike manner. We find no error in the trial court’s determination that the plaintiffs sustained damage to their home in the amount of at least $12,000.00 as a result of a breach of an oral contract reached between the parties.
For the foregoing reasons the trial court judgment is affirmed. All costs of appeal are taxed to defendant.
AFFIRMED.