592 So.2d 445 (1991)
Barbara Brown Bourgeois, Wife of/and Norman BOURGEOIS
v.
ARROW FENCE COMPANY, INC., Harvard Industries, Inc. and Season-All Industries, Inc.
No. 91-CA-456.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 1991.
Rehearing Denied February 14, 1992.
Writ Denied April 10, 1992.
*446 Robert L. Simpson, New Orleans, for plaintiffs/appellees.
Harold E. Dearie, II, Dearie & Killian, Metairie, for defendants/appellants.
Before GAUDIN, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
This is an appeal by defendant, Arrow Fence Company (Arrow) from an adverse judgment in an action for redhibition.
Plaintiffs, Barbara and Norman Bourgeois, homeowners in Jefferson Parish, contracted on October 11, 1984 with Arrow for the construction of an enclosed glass *447 and aluminum patio as an addition to their home. During construction, problems developed with leakage of the roof and side panels of the enclosure. The entire roof was replaced and the construction was completed in February, 1985.
With the next rainfall, the room leaked through both the roof and the side glass panels. Attempts to stop the leakage were unsuccessful and plaintiffs filed this action in redhibition against Arrow,[1] as well as Harvard Industries, the subcontractor, and Season-All Industries, Inc., the manufacturer.
Subsequently, Season-All was dismissed with prejudice and Harvard Industries was dismissed without prejudice. The matter went to trial against Arrow as the only defendant. The trial court rendered judgment in favor of Mr. and Mrs. Bourgeois and against Arrow, condemning Arrow to pay $9,390.00 for replacement of the addition, $2,500 for demolition cost, $250.00 for the plans and $500.00 witness fee for a total sum of $12,640.00 with legal interest from date of judicial demand and all costs. Arrow appeals that judgment, assigning seven assignments of error.
In the first assignment, Arrow argues that the evidence was insufficient to prove the leaks were a result of bad design or faulty workmanship. Arrow admits the roof leaks but submits that the evidence suggests the cause of the leak is improper installation of a light fixture by plaintiff. Additionally, Arrow argues that the problem could not be remedied because plaintiffs denied Arrow access and opportunity to effect repairs.
At trial the plaintiff introduced two contracts. The first is a contract with Arrow for the construction of the aluminum and glass room for a contract price of $8,785.87. That contract specifically excludes brick and electrical work.
The second contract is with John Baker, a subcontractor of Arrow. Mr. Baker drew up the plans and specifications for the room for the consideration of a $250.00 fee from the plaintiffs.
In addition to that documentary evidence, plaintiffs offered testimony from an expert witness, Frank Lopreore. Mr. Lopreore testified that he inspected and photographed the room addition in question. His opinion was that the design of the structure was so flawed it could not be corrected. In support of that opinion, Mr. Lopreore testified that the pitch of the roof is too shallow to allow water to run off at a rate that would not allow it to back up by capillary action. Thus, wind blows rain water up the roof and under the flashing. Further, the windows used are storm windows, intended to be used only in exterior application type sashes. They were never intended to serve as primary windows; but rather are meant for exterior use over existing metal or wood windows. Such windows, Mr. Lopreore explained, are intended to keep out cold, not rain.
This witness also testified that the stationary glass panels which make up much of the side walls of the structure are set in a metal frame with no gasket, resulting in raw glass edges butting against each other with no protection from water seapage. The remaining walls are brick and according to Mr. Lopreore are water tight. However there is no indication that the slab is on pilings. That fact would prevent the plaintiffs from securing a building permit under current building codes in Kenner, according to the witness.
Another witness for plaintiffs was Joseph Olivio, a neighbor of plaintiffs' who assisted in the installation of the light fixture in the ceiling of the structure. He testified that he used ½ inch screws to secure the fixture onto a piece of plywood placed on the ceiling by Arrow for that purpose. He estimated the ceiling itself was about two inches thick and was above the plywood. He testified that he could not have punctured the outer membrane of the roof while installing the light fixture.
Both Barbara and Norman Bourgeois testified that the room leaked through the *448 roof sections, between the glass panels, through the windows and through the light fixture. Photographs and a video tape were introduced into evidence which show substantial water flow into the room during a rain storm.
To refute plaintiffs' claim, defendant presented testimony of Kenneth Turkington, vice-president of Arrow and John Baker, president of Harvard Industries.
Mr. Turkington testified that Arrow subcontracted the construction of the room to Mr. Baker. He further testified that he had visited the job site on several occasions because of problems encountered with leaks in the roof and side panels of what Mr. Turkington described as the "room attachment." According to Mr. Turkington, Arrow sold a pre-fab type of room attachment which is guaranteed not to leak if Arrow is given the opportunity to "handle the warranty." He admitted that the room was nothing more than a glass and screen, non-insulated room made up of storm windows. He explained that the windows do not fit into the frame of the structure, but rather, attach to the outside.
He offered further testimony about failed attempts to stop the roof leakage with styrofoam, tar and finally an entire new roof. He stated that he was working on repair of the leaking windows when this lawsuit was filed.
Mr. Baker refuted Mr. Lopreore's testimony that the glass panels were constructed in such a way to make them impossible to waterproof. Mr. Baker testified that the glass is framed on all four sides and could be water proofed with caulking. He further testified that the windows and glass were sealed with caulking. Mr. Baker testified that the flashing as installed would prevent wind blown water from backing up, although he did admit the video showed the roof leaking. He suggested that perhaps the roof of the existing house was leaking and the water was running into the room attachment from that source. He refuted Mr. Lopreore's testimony that the design prevented repair.
The liability of a contractor for damages due to defective workmanship are contained in Articles 2762 et seq of the Louisiana Civil Code. It has been jurisprudentially established that, implied in every building contract is the fact that the work of the contractor is to be performed in a good, workmanlike manner, free from defects in either materials or workmanship. An owner seeking to recover from a contractor for defective workmanship bears the burden of proving, 1) both the existence and nature of the defects; 2) that the defects were due to faulty materials or workmanship, and 3) the cost of repairing the defects. LSA-C.C. art. 2769. Fortier v. Sessum, 441 So.2d 1238 (La.App. 5th Cir. 1983); Guy Williams Realty v. Shamrock Const., 564 So.2d 689 (La.App. 5th Cir. 1990), writ den. 569 So.2d 982 (La.1990).
Where the defects are such that they cannot be corrected except by removing and replacing the construction, the owner may require the contractor to remove the object from his land and restore the premises to their prior condition. Trahan v. Broussard, 399 So.2d 782 (La.App. 3rd Cir.1981); Fortier v. Sessum, supra.
We find, from the evidence presented, that the room is defective in design as to the roof, side glass panels and windows. Consequently we hold that the trial court was correct in its factual finding that the work done by Arrow is defective and we cannot say, in the absence of evidence to the contrary, that the trial court's acceptance of Mr. Lopreore's conclusion that the structure must be torn down is manifestly erroneous.
In assignments number two and seven Arrow questions the measure of damages used in awarding judgment. We find that it was error for the trial court to fix the damages at replacement cost. A properly constructed room addition in place of the faulty one would place the plaintiffs in a better position than they previously enjoyed. That is not in accordance with the law which requires merely that the plaintiffs be returned to the position they were in prior to the contract with Arrow. Trahan v. Broussard, supra.
*449 Consequently, we find the plaintiff is entitled to collect the entire cost paid to defendant, Arrow, for construction of this defective structure, $8,785.87, plus the cost of demolition of the structure, $2,500.00. The award of $250.00 for plans and the award of $500.00 witness fee are correct.
The defendant also alleges, in his third assignment of error, that the trial court erred in accepting Mr. Lopreore as an expert. Whether an expert meets the qualifications of an expert witness and the competency of the expert witness to testify in specialized areas is within the discretion of the trial court. The exercise of that discretion will not be disturbed by an appellate court unless it is clearly erroneous. Falgoust v. Richardson Industries, 552 So.2d 1348 (La.App. 5th Cir.1989); writ denied 558 So.2d 1126.
Mr. Lopreore is a licensed architect and a licensed builder with extensive construction experience. We find no abuse of discretion in allowing him to testify as an expert in this matter.
In the fourth assignment of error Arrow asserts it was error for the trial court to refuse to admit the National Oceanic & Atmospheric Administration's October 1988 Climatological Summary of the weather for that month recorded at New Orleans International Airport. Arrow wished to use the document to impeach Mr. Lopreore's testimony that it rained a day or two before his inspection.
In support of its argument Arrow cites LSA C.C.P. art. 1393. That article was repealed and replaced with the Louisiana Code of Evidence effective January 1, 1989 and is now of no relevance to this matter. The applicable rule is contained in LSA-C.E. art. 905 which requires certification. Since the document was not proffered and is not contained in the record we are unable to judge whether the document met the necessary certification requirements and are, therefore, unable to overrule the trial court's decision on admissibility.
In the fifth assignment Arrow argues that cross-examination of plaintiffs' expert witness was unduly restrictive in that the trial court did not allow Arrow to question the witness as to his attack on the design of the structure, "which would lead to the issue of what was required to repair and the cost of repairs." We have reviewed the testimony and find the extent to which Arrow was allowed to cross-examine the witness was within reasonable bounds.
In the final argument to be discussed, Arrow asserts its witness, Jack Baker, should have been allowed to testify as an expert despite the fact that he was not listed as an expert on the witness list and he testified simply as a fact witness in a deposition during pre-trial discovery. Arrow's request at trial to introduce expert testimony from a fact witness is not in accordance with LSA-C.C.P. art. 1425 and the trial court was correct to deny the request.
For the foregoing reasons the judgment of the trial court is affirmed except as to the award of damages for replacement cost. That measure of damages is corrected to award contract price of the building. In all other respects the judgment is affirmed at appellant's cost.
CORRECTED AND AS CORRECTED, AFFIRMED.
NOTES
[1] Although the petition indicates this action is brought in redhibition, the assertions in the petition and at trial reveal an action on a construction contract and we will decide it as such.