427 So.2d 504 (1983)
Roland LIBERDA, Plaintiff-Appellant,
v.
ACADIANA ROOFING & SHEET METAL CO., INC. & American Mutual Liability Insurance Co., Defendants-Appellees.
No. 82-438.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1983.
Rehearing Denied March 22, 1983.
Carolyn A. Ingraham, Andrus, Kraft & Preis, Ralph Kraft, Lafayette, for plaintiff-appellant.
Mouton, Roy, Carmouche, Bivens, Judice & Henke, H. Purvis Carmouche, Jr., Voorhies & Labbe, Mark Bienvenu, Lafayette, for defendants-appellees.
Before GUIDRY, CUTRER and LABORDE, JJ.
GUIDRY, Judge.
The plaintiff, Roland J. Liberda, seeks damages resulting from allegedly defective construction of a roof on his home. The roof was laid by the defendant, Acadiana Roofing and Sheet Metal, Inc. Also made defendant is Acadiana Roofing's insurer, American Mutual Liability Insurance Company. The trial court dismissed the plaintiff's demands, and the plaintiff appeals.
The issue on this appeal is the correctness of the trial court's determination that the roof installed by the defendant was laid in a workmanlike manner.
The plaintiff first contacted the defendant in 1976. At the time, construction was underway on the plaintiff's new home in *505 Lafayette. The architect's plans called for an asphalt shingle roof. However, before the roof was laid, the plaintiff noticed a Spanish tile roof under construction on another home in Lafayette, and the plaintiff became interested in putting a Spanish tile roof on his new home. He learned that Spanish tile could be purchased from Acadiana Roofing, after which he contacted the defendant. The defendant had removed the tile, which was approximately fifty years old, from the roof of a high school in Abbeville. The defendant measured the plaintiff's home to determine the amount of tile required to cover it, and thereafter sold the plaintiff forty-seven squares of the used tile for a price of $2,758.28.
Following the sale of the tiles from the defendant to the plaintiff, the two parties agreed that the defendant would install the Spanish tile at a price of $35.00 a square. All dealings between the parties were verbal, and there were no written specifications regarding the installation of the tile. The defendant installed the tile for a price of $3,160.18.
Edward J. Brannon, the president of the defendant corporation, testified that, prior to the installation of the tile, he warned the plaintiff that the vents and flashing supplied for the job were inadequate. The flashing had been installed by another roofer. The vents were installed by the defendant, but had been supplied by the plaintiff. Brannon testified that he warned the plaintiff and the general contractor that when these items had been supplied, the architect's plans called for an asphalt shingle roof, and that they were inadequate for a Spanish tile roof. He stated that Acadiana Roofing proceeded with the installation of the roof only after the plaintiff and the general contractor had been warned of the potential problems. The job was completed in August of 1976.
Shortly after the installation of the roof, during the first heavy rain following the completion of the plaintiff's home, the roof developed leaks. The plaintiff wrote a letter to defendant dated July 5, 1978, demanding that the defendant replace the existing vents and repair the leaks. The defendant, through Brannon, offered to replace any portion of the roof which failed to meet manufacturer's specifications, but took the position that the vents, having been supplied by the plaintiff, were not the responsibility of Acadiana Roofing. The plaintiff demanded that the defendant remove the entire roof, replace all water damaged wooden decking, replace all building paper, and replace all the tiles in accordance with detailed specifications supplied by the plaintiff, the entire cost to be borne by the defendant. Acadiana Roofing rejected this demand.
In October, 1979, the plaintiff hired an architect, Dan Branch, to advise him regarding the repair and/or replacement of the roof. When the defendant refused to replace the roof, Branch supervised the replacement of the roof, which was done by Cribbs, Inc. of Baton Rouge on a cost plus basis. Cribbs billed the plaintiff $18,495.30.
The plaintiff brought this suit to recover the cost of the replacement of the roof, all expenses incidental thereto, plus damages for inconvenience, embarrassment, and loss of use.
It is implied in every building contract that the work of the contractor will be done in a good, workmanlike manner, free from defect either in material or workmanship. Troy v. Bretz, 399 So.2d 667 (La.App. 1st Cir.1981); Standard Roofing Company, Inc. v. Ragusa Brothers, Inc., 338 So.2d 119 (La.App. 1st Cir.1976). The contractor's liability for non-performance of his contract is found in LSA-C.C. Art. 2769, which provides:
"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."
The record contains conflicting testimony regarding the quality of the defendant's workmanship in laying the tile roof. Dan Branch, the architect who supervised the *506 replacement of the roof, was qualified as an expert in architecture, building design and building construction. He testified that the job done by the defendant in laying the roof was not up to workmanlike standards, either functionally or aesthetically. He stated that the underlayment was done incorrectly, the flashing and vents were improper, the tiles were laid with insufficient overlap, and that the tiles were misaligned in various places.
Brannon testified that he saw no sign, either during the installation or on his subsequent visits to the property, that the tile installed by Acadiana Roofing was laid in an improper manner. He also testified that the leaks which developed in the roof were caused by improper flashing and vents, neither of which were the responsibility of Acadiana Roofing.
The trial court is in the best position to evaluate the credibility of witnesses. Reasonable evaluations of credibility and reasonable findings of fact should not be disturbed upon appellate review unless they are clearly wrong. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, writ granted, 359 So.2d 1303 (La.1978), 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3rd Cir. 1979); Bertrand v. Aetna Casualty & Surety Company, 306 So.2d 343 (La.App. 3rd Cir.1975).
The trial court found that the tile was laid by the defendant in a proper manner. For the reasons which follow, we find that his determination is not clearly wrong.
Regarding the functional soundness of the roof, the trial court found that the leaks were caused by improper vents and improper flashing, neither of which were attributable to the defendant. The vents, although installed by the defendant, were supplied by the plaintiff. The flashing was installed by another roofing company. The trial judge's finding is also supported by the testimony of Brannon, who stated that he warned the plaintiff of the potential problems before laying the roof, and that the plaintiff failed to take any precautionary measures to insure that the roof would be waterproof. The record also shows that the leaks in the roof were located near vents, indicating that the vents and flashing in those areas were deficient. Our review of the record indicates no clear error in the trial court's conclusion that the roof laid by the defendant was sufficient to fulfill the intended function of safeguarding the plaintiff's home from the elements, and that the leaks were in fact caused by defective vents and flashing, neither of which were the responsibility of the defendant.
The record also contains evidence regarding the aesthetic quality of the roof laid by the defendant. The plaintiff introduced two sets of photographs to support his contention that the appearance of the roof laid by the defendant did not meet workmanlike standards. The first set of photographs show isolated portions of the roof laid by the defendant. The second set of photographs show portions of the roof after it was replaced under the supervision of the plaintiff's architect and expert witness, Dan Branch.
The trial judge, in his reasons for judgment, found that the photographs revealed no appreciable difference between the roof installed by the defendant and that laid by Cribbs under Branch's supervision. We feel that the photographs show that the replacement roof was constructed in a more careful and professional manner in some areas, but they fall short of proving that the original roof was not laid in a workmanlike manner. The photographs of the original roof were taken some three years after its construction. They focus on very isolated portions of the roof from a very close camera position. There are no photographs of this roof that were taken from a distance sufficient to depict the overall appearance of the roof. It is true that the photographs show that some areas of the original roof are much less aesthetically pleasing than comparable portions of the new roof. However, it is significant to note that the original roof was installed, including the cost of the tiles, for less than $6,000.00. The replacement roof was installed, using the same tiles, for $18,496.30. Under these circumstances, *507 it is understandable that the original roof does not compare favorably with the replacement roof in all respects.
In sum, there is sufficient evidence in the record to support the conclusion that the roof was installed by the defendant in a workmanlike manner. We find no clear error in the trial court's determination and his dismissal of the plaintiff's demands.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to plaintiff-appellant.
AFFIRMED.