436 So.2d 628 (1983)
Jimmy C. MELDER, Plaintiff-Appellee,
v.
Cecil V. GASSIOTT, Defendant-Appellant.
No. 83-156.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1983.
Ronald J. Bertrand, Lake Charles, for defendant-appellant.
*629 John E. Demoruelle, Kinder, for plaintiff-appellee.
Before STOKER, DOUCET and KNOLL, JJ.
KNOLL, Judge.
Jimmy C. Melder brought an action for breach of a building contract against Cecil V. Gassiott to recover damages for the alleged faulty construction of the addition of a room to Melder's home.
The trial court rendered judgment in favor of Melder for $6,750 and Gassiott appealed. In his appeal Gassiott presents two issues:
(1) Whether the trial court committed manifest error in finding Gassiott liable to Melder; and,
(2) Whether the trial court properly determined the amount of damages it awarded Melder.
Melder has filed an answer to Gassiott's appeal seeking an increase of the trial court's award of damages.

FACTS
Jimmy C. Melder orally contracted with Cecil V. Gassiott to construct a 13' X 24' addition to the Melder home. As part of the agreement Gassiott was to complete the exterior work on the project and install a bathroom for $6,900; Melder was to do all of the other work. Gassiott finished his portion of the work during the first months of 1980 and received his final payment from Melder on March 14, 1980.
On May 15, 1981 Melder instituted this suit against Gassiott alleging construction defects caused by faulty workmanship. In summation his complaints are that Gassiott: (1) failed to brace the roof with roof trusses; (2) improperly prepared the foundation for the concrete floor causing the new addition to separate from the original Melder home; and, (3) utilized butt joints in joining the brick from the new addition to the original structure.
Articles 2762 and 2769 of the Civil Code apply to this case. Article 2762 reads as follows:
"If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with bricks."
Article 2769 reads as follows:
"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."
Under these two codal articles it is encumbent upon the plaintiff to prove his case by a preponderance of the evidence. A & M Pest Control Serv. v. Fejta Const. Co., 338 So.2d 946 (La.App. 4th Cir.1976). Plaintiff's burden in such cases may be satisfied either through direct or circumstantial evidence. In Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (La. 1971) the court said:
"* * * Whatever the descriptive term used, however, proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not."
Nichols Ford Company, Inc. v. Hughes, 292 So.2d 345 (La.App. 2nd Cir.1974) delineated three elements of proof in order for a landowner to recover damages from a contractor for defective workmanship; the landowner must establish: (1) that defects exist; (2) that faulty materials or workmanship caused the defects; and (3) the cost of repairing the defects.
In every building contract it is implied that the builder's work will be performed in a good workmanlike manner, free from defects in materials and workmanship. Trahan v. Broussard, 399 So.2d 782 (La.App. 3rd Cir.1981). As forceful as this legal *630 principle is, the jurisprudence has clearly enunciated that before damages may be imposed on a contractor for the breach of this implied obligation "it must be established that the damages suffered by the obligee arose as a result of faulty workmanship or from the use of defective materials or equipment which the undertaker knew or should have known were defective." Tiger Well Service v. Kimball Production Co., 343 So.2d 1153 (La.App. 3rd Cir.1977); Bico Enterprises, Inc. v. Cantrell, 413 So.2d 260 (La.App. 3rd Cir.1982). The proof needed to impose liability under C.C. Arts. 2762 and 2769 must include "some showing of want of skill, efficiency or knowledge, or some lack of ordinary care in the performance of the work or in the selection of suitable materials and equipment." Tiger Well Service, supra. Under the codal articles applicable to the case at bar there is no liability as a matter of law or strict liability.
The record reflects little dispute as to the condition of the room constructed by Gassiott. No roof trusses were installed in the addition, which caused the roof to sag. At the butt joint where the bricks of the new construction meet the original home, the bricks and mortar of the addition have separated leaving a crack of about one-quarter inch at its greatest point of separation at the soffit, tapering down proportionately to the concrete floorslab. All along the depth of the home where the new concrete slab butts against the old slab there is a crack.
The testimony of both litigants reveal that roof trusses are required in construction of this size. Gassiott contends that the installation of the roof trusses was not part of his agreement to do the exterior work. We disagree. The record clearly reflects that Gassiott contracted to put up the roof of the Melder addition. The purpose of the trusses is to provide structural support to the roof. The sagging of the roof is the result of the absence of roof trusses. This is work that Gassiott has failed to do and Melder is therefore entitled to damages occasioned by this failure. LSA-C.C. Art. 2769.
Concerning the separation of the bricks at the butt joint and the separation of the new concrete slab from the old, Melder's expert contractor testified that he would have tied the two slabs together with rebars; added postholes filled with concrete at various points in the footing; and provided a footing of six inches on undisturbed soil. He testified that the incorporation of these precautions would not pretermit the sagging of the foundation, but would significantly have reduced the amount of separation. He admitted that he had not probed the soil to see if Gassiott had utilized any of the precautions he advocated.
The record shows that Gassiott tied the two slabs together with four "dowpins"; dug six postholes beneath the footing and filled them with concrete; and dug a footing of approximately sixteen inches deep and twelve inches wide. This testimony is uncontradicted and corroborated by Donald R. Wright, defendant's expert licensed contractor, who probed beneath the footing to confirm the existence of at least two concrete postholes and by examination saw one of the rebars. The existence of the remaining postholes and rebars was testified to by Freddie Crawford who worked on the construction of this footing.
Both expert contractors devoted a significant amount of testimony to a discussion of the occurrence of a sagging foundation when a new concrete slab is butted against an older. Despite the utilization of the precautions advocated by plaintiff's expert contractor, it was his opinion that he could not guarantee that the two slabs would not have separated; he could only say that by using these precautions there would not be an excessive amount of separation.
Plaintiff further complained of the technique of laying the brick at the butt joint. Although plaintiff's expert contractor said that he would have used a technique which involved the interlacing of the new brick with the old at their juncture, he was unable to establish that this in itself caused the separation. Likewise the use of a butt joint was not established to be an unworkmanlike procedure. Although it may be *631 said that Melder would have preferred the bricks to have been interlaced, no specification was shown to this effect. Gassiott chose one of the two methods generally accepted by the building community.
Taking the evidence in its entirety we can not say that Melder has proved that it is more probable that Gassiott's alleged improper technique for laying the foundation to the Melder addition caused the new concrete slab to separate. In this regard Melder has failed to prove his case by a preponderance of the evidence that Gassiott constructed the foundation of the Melder addition in an unworkmanlike manner.

DECREE
For the foregoing reasons the judgment of the trial court is set aside and this case is remanded for a determination of the amount of roof damages sustained to the Melder home. Costs of this appeal are assessed to the defendant-appellant.
REVERSED AND REMANDED.