564 So.2d 689 (1990)
GUY T. WILLIAMS REALTY, INC.
v.
SHAMROCK CONSTRUCTION COMPANY, INC.
No. 90-CA-54.
Court of Appeal of Louisiana, Fifth Circuit.
June 6, 1990.
Rehearing Denied August 17, 1990.
*690 Joseph F. Roy, P.L.C., Metairie, for appellee, Elliot J. Hano.
Stanley McDermott, Jr., Quentin F. Urquhart, Jr., Montgomery, Barnett, Brown, Read, Hammond and Mintz, New Orleans, *691 for plaintiff/appellee, Guy T. Williams Realty, Inc.
J. Mark Rolling, Hammond, for third party-defendant/appellant, Francis J. Mercante.
A.J. Lentini, Hall, Lentini, Mouledoux & Wimberly, Metairie, for defendant-appellant, Shamrock Const. Co.
Before BOWES, GAUDIN and GRISBAUM, JJ.
BOWES, Judge.
Plaintiff, Guy T. Williams Realty, Inc. (Williams) filed suit against defendant, Shamrock Construction Co., Inc. (Shamrock) for damages for breach of contract due to the allegedly defective construction of an office building in Hammond, Louisiana.
Shamrock filed third party demands against its various subcontractors, Henry Gill, d/b/a Skipper's Construction Company, Inc. (Gill), Mid-Parish Roofing and Sheet Metal, Inc., (Mid-Parish), Glen Henson, d/b/a Henson's Refrigeration, (Henson) Jimmy Schliegilmeyer d/b/a J.J.'s Electrical and Plumbing (J.J.'s). Shamrock further filed a third party demand against Francis Mercante, (Mercante) surety in the payment and performance bond furnished by Henry Gill, and against Elliot Hano, the architect for the project. Shamrock also filed a reconventional demand against Williams for work performed outside the scope of the building contract and for maintenance work done by Shamrock for plaintiff.
Francis Mercante filed cross-claims against Gill, Mid-Parish, Henson, and J.J.'s.
Gill filed a cross-claim against Mid-Parish and Henson.
Trial was held on February 13, 1986, April 28, 1986, April 14, 1987 and May 31, 1988.
On June 28, 1989 the trial court rendered judgment in favor of Williams and against Shamrock on Williams' main demand for $21,860.00, plus legal interest and costs. Shamrock's reconventional demand against Williams was denied. The trial court further rendered judgment in favor of Shamrock on its third party demands against Gill and his surety, Francis Mercante, and Mid-Parish for the amount which Shamrock had been cast, plus legal interest and costs.
Both Shamrock and Mercante have filed motions for appeal.

FACTS
In August of 1979, plaintiff entered into a building contract with Shamrock for the construction of a commercial office building in Hammond, La. This building was to be modeled after a building in Covington, which plaintiff believed had also been constructed by Shamrock. Williams later discovered that Shamrock had not constructed the Covington building.
The plans for the Williams building were drawn by Elliot Hano, an architect hired by Shamrock through Tommy Wulff, who was vice president of Shamrock. Hano testified that Shamrock's representative, Tommy Wulff, showed him a set of plans for another building which he said he wanted to duplicate. Wulff told Hano not to make the plans as detailed as the set he was showing Hano because they were going to build an identical building and that the set Hano was to draw up was something to get a permit and to show general intent.
Shamrock did not construct the building itself. Instead, unknown to plaintiff, it contracted the entire job to Henry Gill d/b/a Skipper's Construction Company, an almost completely inexperienced contractor, for a lesser amount.
Gill testified that he contracted with Shamrock, through Tommy Wulff, to handle the entire construction job. Gill and his surety, Mercante, selected the subcontractors hired. However, because Gill did not have a state license, Shamrock handled the financial aspects of the construction project concerning payment to the subcontractors.
Gill further testified that it was his perception that Tommy Wulff was the "field supervisor" for Shamrock. Gill and Wulff communicated on a daily basis via telephone. Such daily conversations were mandatory because Shamrock had furnished *692 Gill with a skeleton-like two page set of plans and no specifications.
Construction of the building began in October 1979. The first tenants moved into the building in December of 1979, shortly before completion. On January 22, 1980, the building was accepted by plaintiff and its financiers.
In September and October of 1980, plaintiff began to receive complaints from tenants of water leakage and water damage. Plaintiff relayed these complaints, first by telephone and then via written correspondence to Shamrock, and requested that the problem be corrected. Shamrock contacted Gill, who took no action to stop the leakage. Shamrock then attempted to correct the leakage problem by itself.
William Hogan, president of Shamrock testified that when he inspected the building he saw visible signs of water on the inside of the building. He later determined that water was coming from around the air conditioning machinery duct work. He attributed the problem to incorrect placement of the air conditioning units. In April of 1981 and in October of 1982, Shamrock conducted repair work, consisting of relocating the air conditioning units, installing new duct work and sheet metal coils, installing roof drains, adding caulking and flashing and making other remedial repairs.
Hogan testified that he conducted another inspection after completion of the repair work in December 1982 or January 1983. He discovered that the roof drain was clogged with dirt and leaves and that a large sign had been nailed to the roof.
Williams testified that, despite Shamrock's efforts, the roof continued to leak.
Because Shamrock appeared unable to remedy the leakage problem in August and September of 1982, plaintiff contacted two independent contractors, Carl Wainwright and Frank Bell, and requested inspections and appraisals to determine the cause of the leakage and the work necessary to correct the problems. Wainwright qualified as an expert in building construction and repair. Wainwright initially inspected the building in July of 1981 and found several deficiencies which relate to the leakage problem. These he relayed to Shamrock in a report, an excerpt of which follows:
General:
1) Flashing not installed on horizontal joints, causing water to leak into the walls. Batt shouldn't be installed on exterior surface.
Roof
1) Plywood not nailed properly. (Plans called for ¾" but roof feels soft).
2) Pitch pockets on air conditioners are not installed.
3) Cant strips as called for on plans are not installed.
4) Flashings as called for on plans not installed, both above windows and on side walls.
5) Air conditioner leaks when it rains caused by no insulation of ducts.
6) Plans do not call for roof drains. Why?
Wainwright inspected the building a second time in August of 1982. In a letter to Williams, he made the following findings:
1) Water 1½" deep by the air conditioner on the northernmost suite.
2) Water generally over most of the roof.
3) Water 1" deep at the roof drain.
4) Plywood buckling on the roof, causing high spots.
5) Trim falling off of window (improperly installed).
6) Plywood beneath windows beginning to rot due to improper installation. Water is wicking approximately 4" to 5" up the wall. This plywood must be cut off above the water line so that it will have a chance to dry out.
7) It appears that the south wing is at a higher elevation than the north wing.
8) The sheetrock in the easternmost suite indicates a roof leak. This is in the same area where the plywood has buckled on the roof.
9) The leak in the northernmost suite is caused by the amputated, under-sized roof joist.

*693 It is my opinion that replacing the entire roof, nailing the roof sheathing, adding additional roof drains will possibly stop the leaks. [emphasis supplied]
In September of 1982, Wainwright submitted an estimate of $25,186.00 for the repairs required to correct the problems in the building.
The second contractor contacted by Williams was Frank Bell. He was also qualified as an expert in construction. He inspected the building in November of 1982. In a letter to Williams' attorney, he summarized the results of the inspection as follows:
1) A/C units and duct penetrations are poorly located and causes a flashing problem.
2) Wood trim around windows trap water, possibly causing leaks and certainly will cause deterioration in the future. Trim is not as shown on drawings.
3) No metal counterflashings are visible at base of walls. Membrane base flashings have been installed in hot asphalt and are terminated at bottom edge of siding. This will surely cause water to become trapped behind flashings, causing leaks and deterioration.
4) It appears that 30# asphalt saturated felt commonly used for shingle underlayment was improperly substituted for the asbestos or fiber-glass felt recommended for smooth built-up roofing. The life expectancy of 30# felt used in this manner is in my opinion approximately six years.
5) Several areas of plywood deck are loose and need re-nailing. Loose decking can cause splitting of membrane, thus leaks.
6) Roof appears to have been ponding a lot of water until a roof area drain was installed.
7) All metal flashings on sloped roofs were fabricated with no hem edge, and the portion of metal that goes under the shingles is only 1½" and should be approximately 4". From what I could see without removing several cedar shake shingles, this is not causing leaks, but the workmanship is very poor.
Frank Bell submitted an estimate for repair of the building, including replacing the entire roof, in the amount of $21,860.00. Plaintiff hired Bell who had submitted the lower of the two estimates. Bell did the work and was paid by Williams. Wainwright inspected Bell's work and found it adequate and necessary to correct the leakage problem.
After the roof was replaced, no further leaking problems occurred.

ASSIGNMENTS OF ERROR
Shamrock, in his first two assignments of error alleges that the trial court erred in rendering judgment in favor of plaintiff. Shamrock first argues that replacing the entire roof was unnecessary to remedy the defects and therefore the award of the cost of replacing the entire roof as damages was excessive.
Secondly, Shamrock argues that the trial court erred in holding that the workmanship of the contractors was the cause of the alleged leaks, and that the leaks were caused by improper maintenance of the plaintiffs.
Mercante argues, in his first assignment of error, that the trial court erred in awarding excessive damages. Williams filed an answer to both appeals in which he alleges that the trial court erred in awarding insufficient damages. In as much as these arguments involve the same legal precepts, they will be discussed together.
The law is well settled to the effect that it is implied in every building contract that the work of the contractor is to be performed in a good, workmanlike manner, free from defects in either materials or workmanship. An owner seeking to recover from a contractor bears the burden of proving 1) both the existence and nature of the defects; 2) that the defects were due to faulty materials or workmanship, and 3) the cost of repairing the defects. C.C. art. 2769; Fortier v. Sessum, 441 So.2d 1238 (La.App. 5th Cir.1983); Liberda v. Acadiana Roofing & Sheet Metal, 427 So.2d 504 *694 (La.App.3d Cir.1983); Goudeau v. Hill, 410 So.2d 338 (La.App. 4th Cir.1982).
The plaintiff may meet this burden either through direct or circumstantial evidence. Melder v. Gassiott, 436 So.2d 628 (La.App.3d Cir.1983). Also, jurisprudence holds that a roof which leaks is a defective roof. Hebert v. McDaniel, 479 So.2d 1029 (La.App.3d Cir.1985); Goudeau v. Hill, supra. This is also self evident.
The record in the case before us shows that the plaintiff has met his burden of proof in this case.
It is undisputed that the roof leaked. Shamrock originally attributed the leaking to the incorrect placement of the air conditioning units and attempted to remedy the problem. However, Williams testified that the roof continued to leak after Shamrock's efforts.
Both Wainwright and Bell, the independent contractors hired by Williams, testified that the leaks were caused by faulty workmanship, including placement of the air conditioning units, lack of cant strips and improper flashing.
Shamrock and Mercante argue that the defect could have been remedied by replacing the flashings which Shamrock alleges would have cost only $400.00. In this connection, Shamrock, in its brief, in an attempt to substantiate this argument, offers some brief quotations from Wainwright's testimony and states that "even the roofer who actually performed the work testified that the roof was not the cause of the leaks."
However, both Wainwright and Bell also said that the only way to correct the leaking was to replace the entire roof. (See detailed estimates of both experts quoted herein, supra). In fact, Shamrock's witnesses testified that Shamrock did remedial work on the flashings. It is obvious that after this work was done the roof still leaked. In addition, Wainwright testified that he had inspected the work done by Bell and it (including the replacement of the entire roof) was adequate and necessary.
For a breach of a building contract under LSA-C.C. art. 2769, the appropriate measure of damages is the cost of repairing any defects or of completing the work. Guitreau v. Juneau, 479 So.2d 431 (La. App. 1st Cir.1985). In a case such as this, where the replacement of the roof is necessary to cure the defects, then the cost of replacing the roof is a proper element of damages. Compare Hebert v. McDaniel, supra; New Zion Baptist Church v. Mecco, Inc., 478 So.2d 1364 (La.App. 4th Cir. 1985).
Shamrock and Mercante both further allege that the alleged damage to the roof was caused in significant part by both Williams' failure to perform routine maintenance on the roof (in cleaning leaves and debris) and William's actions in allowing a large sign to be placed on the roof. However, both Wainwright and Bell testified that the roof was properly maintained and that the sign was not a contributing cause of the defects resulting in the leaks.
Although the trial judge did not render written reasons for his rulings, it appears from his judgment that he found the testimony of Carl Wainwright and Frank Bell more credible than that of Shamrock's witnesses. It is legion that the trial court's determination of the credibility of the witnesses is entitled to great weight and should not be disturbed on appellate review unless manifestly erroneous (clearly wrong). Rosell v. ESCO, 549 So.2d 840 (La.1989).
Here, we find no error in the conclusions of the trial court in this record, including the necessity of an entire new roof to remedy the leaks and other defects in the construction of the building.
In his answer to the appeal, Williams alleges that the trial court erred in failing to award additional damages for loss of rents from the property.
C.C. art. 1995 provides that: "Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived."
In an action for breach of contract, the plaintiff may recover damages for *695 proven losses. F & F Transfer, Inc. v. Tardo, 425 So.2d 874 (La.App. 4th Cir. 1983). The loss of profits must be proven with reasonable certainty and cannot be based upon conjecture and speculation. Moss v. Guarisco, 459 So.2d 1 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1247 (La. 1985).
Plaintiff testified that he contracted for a building to be used as a commercial office building. To prove his loss of profits (rent), plaintiff presented the testimony of Katie Wainwright, a realtor and owner of Century 21. Ms. Wainwright was qualified by the court as an expert in the field of commercial property management. During the time the roof was leaking, she was manager of the property for Williams.
Ms. Wainwright testified that had the building not been leaking it would have had a 90% occupancy rate, because of the lack of office space in Hammond during that time period. She attributed the vacancies in the building directly to the leaking of the roof. Her testimony further established that the lost rentals due to the vacant offices amounted to $13,287.50. This testimony stands absolutely uncontroverted by any of the defendants or any witnesses on their behalf. Accordingly, we find that the plaintiff proved, with reasonable certainty, that it sustained lost profits in the form of rents from the building as a result of the problem with leaking. We, therefore, find that the trial court erred in not awarding loss rental income as damages to plaintiff, appellee.
In its third assignment of error, Shamrock argues that the trial court erred in denying its reconventional demand for compensation for services performed for the installation and correction of a sewerline and/or septic tank near the building in question. Shamrock alleges that the sewerage work was performed pursuant to a separate and independent contract between Williams and Gill.
At the trial, Gill testified that he installed a septic tank at a cost of approximately $500.00 for Williams while the building construction was in progress. He testified that he received no complaints from anyone concerning the installation of the tank.
Williams testified that, when he talked to Gill about the installation of the septic tank, he believed that he was talking to Shamrock's agent.
Tommy Hogan, president of Shamrock, testified that Shamrock had to pay for repairs to the sewer line at a cost of $500.00. At the time of payment, he believed that Shamrock was responsible for the sewerage line. He later discovered that Gill had installed the septic tank pursuant to an independent agreement with Williams.
Williams admitted at trial that he did not pay Shamrock for the repair work.
The evidence establishes that Shamrock paid for corrective work to a sewerage line which was outside of the original contract. However, Shamrock did not contact Gill and give Skipper Construction Company the opportunity to repair the line or to pay for repair work. The evidence does not establish whether Gill was responsible for repairing the work he had done or whether Williams was obligated to finance the necessary repairs. Accordingly, while Shamrock proved that the money was owed to it for sewer line repairs, it did not prove by a preponderance of the evidence that Williams was responsible for those repairs. Therefore, we see no error in the trial court's denial of Shamrock's reconventional demand against Williams.
This assignment lacks merit.
In its fourth assignment of error, Shamrock argues that the trial court erred in denying judgment in favor of Shamrock on its third party demands against the sub-contractors.
The trial court granted judgment in favor of Shamrock and against Gill, Mercante and Mid-Parish Roofing. The trial court did not render judgment on Shamrock's third party claims against architect Elliot Hano, Glen Henson d/b/a Henson's Refrigeration and Jimmy Schliegelmeyer d/b/a J.J.'s Electrical and Plumbing.
Likewise, Mercante in his second assignment of error, argues that the trial court erred in failing to rule on his third party *696 demands against Gill and the subcontractors.
In its brief, Shamrock argues that the leakage was caused by improper installation of the air conditioners, necessitating Shamrock's repair work to remedy this defect. Accordingly it contends that it should have been granted judgment in its favor against the subcontractors. Shamrock also contends that, pursuant to its contract between itself and Gill, it should have been awarded attorney fees.
Mercante as surety, may raise any claims which Gill may have raised against the subcontractors. Accordingly, Mercante may raise claims of improper installation of the air conditioning units and lack of "cant strips" in conjunction with installing the roof.
Since there are so many incidental demands raised by the pleadings which were not ruled upon by the trial court, we shall remand the case to the trial court for a consideration and determination of all these demands.
We further note that third party defendant, Elliot Hano, filed an appellee's brief requesting that he be dismissed from this suit. No judgment has been rendered against him and therefore he is not properly before this Court at this time. However, because the claims against him have been remanded to the trial court for consideration, Hano may now raise this issue before the trial court. Therefore, Hano's request for dismissal is denied.
Mercante also alleges, in his third assignment of error, that the trial court erred in rendering judgment against him and in favor of Shamrock on Shamrock's third party demand. Mercante argues that Shamrock approved of changes in the building plans which caused the defects and therefore cannot now be indemnified for its error.
Gill testified at trial that he was only provided with a two page set of plans and was given no specifications for the construction of the building. As as result, Gill was in contact with Shamrock through vice president Wulff on a daily basis. Gill admitted at trial that it was his idea to relocate the air conditioning units closer to the window wall and that Wulff approved. Gill also admitted that, when Mid-Parish Roofing told him there was no room for cant strips, he informed Wulff and they agreed to omit the strips.
However, the testimony of both Wainwright and Bell showed that it was not only improper placement, but also improper installation, which caused the leakage around the air conditioning units. Also, it was not only the lack of cant strips, but also improper installation of flashing, which led to leaks in the window wall. In view of this evidence we find that Shamrock's actions in approving the changes described above does not absolve Mercante from liability as Gill's surety for the substandard and defective workmanship of Gill and his subcontractors.
We find this assignment of error to be without merit.
For the above reasons, we affirm the judgment of the trial court in favor of Williams and against Shamrock. However, we amend the award of damages to $34,147.50 to include Williams' lost rentals of $13,287.50.
The trial court also rendered judgment in favor of Shamrock and against Gill, Mercante and Mid-Parish Roofing. While we are inclined at this point to agree with the trial court's judgment, we note that there are several claims relative to the liability of these parties and also claims raised by these parties against the other defendants, which were not ruled upon. We therefore decline to rule on this part of the judgment, as a matter of fairness to Mercante and the other defendants, until Mercante's demands as well as all the other incidental demands in this suit, are ruled upon by the trial court. Accordingly, we remand this case for consideration of the claims outstanding and we also remand the trial court's judgment in favor of Shamrock and against Gill, Mercante and Mid-Parish Roofing for reconsideration if necessary.
All costs of this appeal are to be borne by appellants.
*697 AMENDED IN PART AND AS AMENDED AFFIRMED IN PART REMANDED IN PART